**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | | |
|---|---|---|
| ANTHONY M. QUIRINDONGO, | : | |
| | : | Civil Action No. 07-3613(SDW) |
| Plaintiff, | : | |
| | : | |
| | : | |
| v. | : | **OPINION** |
| | : | |
| GEORGE HAYMAN, et al., | : | |
| | : | |
| Defendants. | : | |

**APPEARANCES:**

    ANTHONY M. QUIRINDONGO, Plaintiff pro se
    #408711/SBI# 245655C
    East Jersey State Prison
    Lock Bag R (7W)
    Rahway, New Jersey 07065

**WIGENTON,** District Judge

    Plaintiff Anthony M. Quirindongo ("Quirindongo"), currently confined at the East Jersey State Prison in Rahway, New Jersey, seeks to bring this action in forma pauperis pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights. Based on his affidavit of indigence and the absence of three qualifying dismissals within 28 U.S.C. § 1915(g), the Court will grant plaintiff's application to proceed in forma pauperis pursuant to 28 U.S.C. § 1915(a) (1998) and order the Clerk of the Court to file the Complaint.

    At this time, the Court must review the Complaint pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A to determine whether it

should be dismissed as frivolous or malicious, for failure to
state a claim upon which relief may be granted, or because it
seeks monetary relief from a defendant who is immune from such
relief.  For the reasons set forth below, the Court concludes
that the Complaint should be dismissed for failure to state a
claim upon which relief may be granted.

I.  BACKGROUND

Quirindongo brings this civil rights action against the
following named defendants: George Hayman, Commissioner of the
New Jersey Department of Corrections ("NJDOC") and Chairman of
Inter-Institutional Classification; Thomas M. Powers, Acting
Administrator and Institutional Classification Chairman at East
Jersey State Prison ("EJSP"); Steven Johnson, Executive Assistant
Classification Committee Member; Wilson Santiago, Classification
Committee Member; Valerie Jeter, Classification Committee Member;
L.R. Nias, Classification Committee Member; C. Foreman,
Classification Committee Member; and all unknown Classification
Committee Members.  (Complaint, Caption and ¶¶ 4-11).  The
following factual allegations by plaintiff are taken from the
Complaint and are accepted for purposes of this screening only.
The Court has made no findings as to the veracity of plaintiff's
allegations.

Quirindongo alleges that, on April 5, 2006, he appeared
before the Institutional Classification Committee ("ICC") at EJSP

2

for his yearly review.  At that time, Quirindongo requested a reduction in his status from gang minimum to full minimum. Defendant Powers told plaintiff that he could not attain "full minimum status" at EJSP due to the nature of the crime for which he was convicted.  (Compl., ¶¶ 12, 13).

Quirindongo submitted an inmate request form on August 21, 2006, again requesting a reduction of his custody status from gang minimum to full minimum.  The ICC denied this second request on September 13, 2006, stating that plaintiff was "Not eligible for status at EJSP under community agreement."  (Compl., ¶¶ 14, 15).  Plaintiff sought clarification from the ICC as to their decision.  On October 24, 2006, the ICC clarified that "Manslaughter prevents you from going to the camps."  (Compl., ¶¶ 16, 19).

Quirindongo also filed an appeal with the Superior Court of New Jersey, Appellate Division contesting the ICC decision.  On December 8, 2006, a remand was granted and the Appellate Division did not retain jurisdiction.  On December 14, 2006, Quirindongo received a Classification Committee Result Sheet, indicating that plaintiff was referred to the EJSP "Psych" Department for clearance of full minimum status in response to the remand order. (Compl., ¶¶ 17, 20-21).

On December 18, 2006, Quirindongo appeared for an informal meeting with defendant Steven Johnson.  Johnson informed

plaintiff that a mistake had been made in referring him to the "psych" department for full minimum status because of the proximity of the Rahway Camp to the surrounding community. Johnson also told plaintiff that plaintiff could ask to be transferred to another prison facility with the hope of achieving full minimum status there, although there was no guarantee that a status reduction would be given at the new facility. (Compl., ¶ 22).

On December 21, 2006, Quirindongo received a Classification Committee Result Sheet in which the ICC officially rescinded the December 14, 2006 referral order. The Result Sheet indicated that plaintiff was not suitable for full minimum status at that time because of the field account of the offense, the length of plaintiff's sentence, lack of supervision in a full minimum setting, and the safety of the community. The Result Sheet also noted the December 18, 2006 interview between plaintiff and Johnson at which the offer of a transfer was declined by Quirindongo. Johnson also confirmed this account in an inter-office memo dated December 22, 2006. (Compl., ¶¶ 23-25).

On January 10, 2007, Quirindongo met with Dr. Floyd at EJSP for a psychological evaluation for full minimum status. Dr. Floyd told plaintiff that he would recommend him for full minimum status and would submit a full report to the ICC. On January 23, 2007, plaintiff submitted yet another inmate request form

4

requesting a reduction in custody status from gang minimum to full minimum based on his positive psychological evaluation.  The ICC denied this request on February 20, 2007, stating that "The committee feels you are not suitable for FM at this time.  Your yearly review is in April.  I am sure you may request in person." (Compl., ¶¶ 26-29).

On April 25, 2007, plaintiff met with the ICC for his yearly review where he again requested a reduction in his custody status to full minimum.  Defendant Jeter told Quirindongo that plaintiff's aggravated manslaughter conviction made him ineligible for full minimum custody status because of a community agreement between EJSP and the Township of Woodbridge.  When plaintiff told Jeter that an inter-department memo had stated that the community agreement could not be used to deny him full minimum custody status, Jeter told plaintiff that the ICC could still deny plaintiff the requested status reduction on other grounds.  Quirindongo was then told that a final decision was being referred to defendant Powers.  (Compl., ¶¶ 30-35).

On May 8, 2007, Quirindongo received a Classification Committee Result Sheet, dated May 2, 2007, denying a reduction in custody status because of the "proximity of Rahway Camp to local residential area."  Plaintiff met with defendant Johnson on May 10, 2007 to discuss an institutional transfer to a prison where plaintiff could obtain full minimum status.  At that time,

Quirindongo again sought to obtain a custody status reduction but was rebuffed.  Plaintiff gave Johnson an Institutional Transfer Request Form, which requested a transfer "Only to receive full minimum status at receiving institution."  Plaintiff had checked Bayside State Prison and South Wood State Prison as possible choices for a transfer.  Johnson told Quirindongo that defendant Powers would be calling these prisons to arrange the transfer, but there was no guarantee that plaintiff would receive the reduction in custody status if transferred.  The transfer request form was then signed and submitted for processing.  (Compl., ¶¶ 36-41).

On May 16, 2007, the ICC referred plaintiff to the IICC for transfer consideration to Bayside State Prison.  The IICC denied the request on the ground that "Present assignment is appropriate."  On June 4, 2007, Quirindongo made his sixth request to the ICC for a reduction in custody status based on the IICC denial of the transfer request.  On June 21, 2007, the ICC denied the request.

Plaintiff submitted this Complaint for filing on or about August 2, 2007.  He claims that his rights under New Jersey state law and the New Jersey Constitution have been violated.  Quirindongo also asserts violations of due process and equal protection under the Fourteenth Amendment.  (Compl., Claims at ¶¶ 47-63).  Plaintiff seeks compensatory and punitive damages in excess of § 220,000.00.  He also asks that the use of the

6

community agreement between EJSP and the Township of Woodbridge to restrict plaintiff from a reduction in custody status be declared unconstitutional or unlawful, and that the defendant be enjoined from the practice of denying a reduction of custody status on this ground.  (Compl., Relief).

II.  <u>STANDARDS FOR A SUA SPONTE DISMISSAL</u>

The Prison Litigation Reform Act ("PLRA"), Pub. L. No. 104-134, §§ 801-810, 110 Stat. 1321-66 to 1321-77 (April 26, 1996), requires a district court to review a complaint in a civil action in which a prisoner is proceeding <u>in forma pauperis</u> or seeks redress against a governmental employee or entity.  The Court is required to identify cognizable claims and to <u>sua sponte</u> dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B) and 1915A.

In determining the sufficiency of a <u>pro se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff.  <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992).  The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff."  <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997).  The Court

need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions."  <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact."  <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)).  The standard for evaluating whether a complaint is "frivolous" is an objective one.  <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'"  <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981).  However, where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment.  <u>Denton v. Hernandez</u>, 504 U.S. 25, 34 (1992); <u>Alston v. Parker</u>, 363 F.3d 229 (3d Cir. 2004)(complaint that satisfied notice pleading requirement that it contain short, plain statement of the claim but lacked sufficient detail to function as a guide to discovery was not required to be dismissed for failure to state a claim; district court should permit a curative amendment before dismissing a complaint, unless an amendment would be futile or inequitable); <u>Grayson v. Mayview State Hospital</u>, 293 F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.

§ 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v. Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

III.   <u>SECTION 1983 ACTIONS</u>

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 alleging violations of his civil rights guaranteed under the United States Constitution.  Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory ... subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States and, second, that the alleged deprivation was committed or caused by a person acting under color of state law.  <u>West v. Atkins</u>, 487 U.S. 42, 48 (1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

IV.   <u>ANALYSIS</u>

A.   <u>Due Process Claim</u>

The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States provides: "[N]or shall any State deprive any person of life, liberty, or property, without

9

due process of law." U.S. Const. amend. XIV. To analyze a procedural due process claim, the first step is to decide whether the person was deprived of a liberty or property interest protected by due process. See Fuentes v. Shevin, 407 U.S. 67 (1972). Only if the answer is yes, is the second step, determining what process is due, necessary. See Morrissey v. Brewer, 408 U.S. 471 (1972).

Liberty interests protected by the Due Process Clause of the Fourteenth Amendment may arise under that clause itself or be created by mandatory language in state statutes or regulations. See Sandin v. Conner, 515 U.S. 472, 483-484 (1995). But "the Due Process Clause does not protect every change in the conditions of confinement having a substantial adverse impact on the prisoner." Id. at 478. "As long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976); see Vitek v. Jones, 445 U.S. 480, 493 (1980). A convicted inmate such as Quirindongo has no liberty interest arising by force of the Due Process Clause itself in remaining in the general population. See Montanye, 427 U.S. at 242; Torres v. Fauver, 292 F.3d 141, 150 (3d Cir. 2002).

Indeed, it is well established that an inmate does not possess a liberty interest arising from the Due Process Clause in

assignment to a particular custody level or security
classification or a place of confinement.  See <u>Wilkinson v.
Austin</u>, 545 U.S. 209, 125 S.Ct. 2384, 2393 (2005)(the
Constitution does not give rise to a liberty interest in avoiding
transfers to more adverse conditions of confinement); <u>Olim v.
Wakinekona</u>, 461 U.S. 238, 245 (1983); <u>Meachum v. Fano</u>, 427 U.S.
215, 224-25 (1976); <u>Montayne</u>, 427 U.S. at 243; <u>Moody v. Daggett</u>,
429 U.S. 78, 88 n.9 (1976).  Moreover, the custody placement or
classification of state prisoners within the State prison system
is among the "wide spectrum of discretionary actions that
traditionally have been the business of prison administrators
rather than of the federal courts."  <u>Meachum</u>, 427 U.S. at 225.

        However, the state may create a protected liberty interest
through a statute or regulation requiring placement in the
general population under certain circumstances.  See <u>Sandin</u>, 515
U.S. at 483-84.  In <u>Sandin</u>, the United States Supreme Court has
held that "mandatory language in a state law or regulation can
create a protected liberty interest only if the alleged
deprivation 'imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life.'"
<u>Torres</u>, 292 F.3d at 151 (quoting <u>Sandin</u>, 515 U.S. at 484).  But
"confinement in administrative or punitive segregation will
rarely be sufficient, without more, to establish the kind of
'atypical' deprivation of prison life necessary to implicate a
liberty interest."  <u>Smith v. Mensinger</u>, 293 F.3d 641, 653 (3d

Cir. 2002); see also Fraise v. Terhune, 283 F.3d 506, 522-523 (3d Cir. 2002) (New Jersey prisoners have no protected liberty interest in being free of indefinite segregated confinement in a Security Threat Group Management Unit); Hluchan v. Fauver, 480 F. Supp. 103, 108 (D.N.J. 1979)("Under New Jersey law, state prisoners have no right to be assigned to any particular custody level or have access to rehabilitative programs.").

Applying these principles here, and examining the pertinent New Jersey regulations, this Court notes that a New Jersey inmate has "[n]o right to reduced custody." N.J.A.C. 10A:9-4.2.[1] Further, when making a decision to reduce an inmate's custody status, "the ICC *shall* take into consideration all relevant factors," which may include "[a]ny reason which, in the opinion of the Administrator and the ICC, relates to the best interests of the inmate or the safe, orderly operation of the correctional facility or the safety of the community or public at large." N.J.A.C. 10A:9-4.5(a)(9)[emphasis added]. The ICC "*shall* not be compelled by these criteria to automatically grant a reduction in custody status to every inmate who is eligible for consideration." N.J.A.C. 10A:9-4.5(c). See also N.J.A.C. 10A:9-4.6(e)("I.C.C.s are not obligated to advance an inmate from gang minimum custody status to full minimum custody status even though

--------

[1] "A reduction in custody status is a privilege and not a right." N.J.A.C. 10A:9-4.2.

the inmate qualifies for consideration under the criteria set forth in this section").

Therefore, this Court finds that Quirindongo has no constitutionally protected liberty interest in obtaining a reduced custody status.  See Muhammad v. Balicki, 327 N.J. Super. 369 (App. Div. 2000)(inmate has no liberty interest in denial of less restrictive classification); see also White v. Fauver, 219 N.J. Super. 170 (App. Div. 1987)(finding no constitutionally protected liberty interest in reduced custody status).  Likewise, this Court finds no constitutionally protected liberty interest in institutional placements or transfers.  See Wilkinson, 545 U.S. at 221; Olim v. Wakinekona, 461 U.S. at 245; Meachum, 427 U.S. at 224-25; Montayne, 427 U.S. at 243.  Accordingly, this due process claim fails to state a claim and will be dismissed pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).

B.  Equal Protection Claim

Quirindongo also asserts that defendants' refusal to reduce plaintiff's custody status violates his right to equal protection guaranteed under the Fourteenth Amendment.  The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  City of Cleburne, Texas v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (citing Plyler v. Doe, 457 U.S. 202, 216 (1982); Artway v. Attorney

13

General of New Jersey, 81 F.3d 1235, 1267 (3d Cir. 1996).
Despite its sweeping language, though, "[t]he Equal Protection
Clause does not forbid classifications.  It simply keeps
governmental decisionmakers from treating differently persons who
are in all relevant respects alike."  Nordlinger v. Hahn, 505
U.S. 1, 10 (1992).

Proof of disparate impact alone, however, is not sufficient
to succeed on an equal protection claim; a plaintiff also must
prove that the defendant intended to discriminate.  Village of
Arlington Heights v. Metropolitan Housing Development Corp., 429
U.S. 252, 264-66 (1977); Washington v. Davis, 426 U.S. 229, 242,
244-45 (1976).  Thus, discriminatory intent must be a motivating
factor in the decision, but it need not be the sole motivating
factor.  Village of Arlington Heights, 429 U.S. at 265-66.

Under this standard, the Court finds that plaintiff has
failed to articulate an equal protection violation.  Quirindongo
has not alleged that he was singled out for discriminatory
treatment different from other similarly situated prisoners
seeking full minimum custody status.  Moreover, inmates are not
members of a suspect class.  See Myrie v. Comm'r, N.J. Dept. Of
Corrections, 267 F.3d 251, 263 (3d Cir. 2001)(noting that
inmates, as a class, do not constitute a "discrete and insular"
minority); Abdul-Akbar v. McKelvie, 239 F.3d 307 (3d Cir.), cert.
denied 533 U.S. 953 (2001).  Here, it is plain that any inmate
with a similar conviction would not be granted full minimum

14

custody status at the Rahway Camp by the ICC because of the community agreement made between the Township of Woodbridge and the EJSP for the safety of the community.   Therefore, this Court concludes that plaintiff has failed to demonstrate any equal protection violation and this claim will be dismissed pursuant to 28 U.S.C. § 1915A(b)(i) for failure to state a claim upon which relief may be granted.

C.   State Law Claims

Finally, plaintiff alleges that the refusal by defendants to reduce his custody level violates state law.  Violation of state law, as alleged by Quirindongo, is not cognizable in a § 1983 claim.  Additionally, because this Court has determined that plaintiff has no cognizable federal claims under the Fourteenth Amendment as alleged, the Court declines to exercise pendent or supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) with respect to the state law claims asserted.  Plaintiff is at liberty to raise these state law claims in a New Jersey state court.

V.   CONCLUSION

For the reasons set forth above, the Complaint will be dismissed for failure to state a claim, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1).  An appropriate order follows.


                                   /s/ SUSAN D. WIGENTON
                                   United States District Judge
Dated: NOVEMBER 30, 2007

15